

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | * | |
| MATTHEW MCCLOSKEY, | * | Case No. 04-26258-PM |
| DEBRA MCCLOSKEY, | | Chapter 13 |
| | * | |
| Debtors. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF DECISION IN SUPPORT OF ORDER
DENYING RENEWED REQUEST [81] TO TERMINATE AUTOMATIC
PAYROLL DEDUCTIONS IN FAVOR OF TRUSTEE DUE TO COMPLETED
REFINANCE AND COMPLETION OF PLAN BALANCE**

The Court has before it the Debtors' Renewed Request [81] to Terminate Automatic Payroll Deductions in Favor of Trustee Due to Completed Refinance and Completion of Plan Balance (the "Request"), filed on November 20, 2006. A hearing on this matter was held on December 19, 2006. During the hearing, the Debtors raised for the first time arguments not presented in the Request. At the close of argument presented by both sides, the Court instructed the Debtors to submit additional briefing with authority in support of their position on or before January 15, 2007, and the Trustee to submit a reply on or before January 31, 2007. Neither the Debtors nor the Trustee filed a brief.

The Court has reviewed the pleadings, exhibits and the record in this case, and finds that the Request will be denied.

## BACKGROUND

On July 6, 2004, the Debtors filed their voluntary petition under Chapter 13 of the Bankruptcy Code. On October 19, 2004, they filed an Amended Chapter 13 Plan (the "Plan"). A hearing on confirmation of the Plan was held on November 30, 2004 and the Plan was confirmed by Order [18] entered on December 9, 2004. Pursuant to the Plan, the Debtors were to pay a total of $48,736.00 over sixty (60) months. An Order [19] to Pay Debtor's Wages to Trustee (the "Wage Order") was also entered on December 9, 2004 to effectuate the monthly payments.

Under the Plan, the prepetition arrearage owed to Flagstar Bank, FSB ("Flagstar Bank"), the Debtors' mortgage company, in the amount of $9,488.90, was to be paid by the Trustee under the Plan and the post-petition payments were to be paid by the Debtors directly to Flagstar Bank. However, at some point during the repayment period, the Debtors fell behind on the post-petition payments, and on July 10, 2006, Flagstar Bank filed a Motion [56] for Relief from Automatic Stay. According to this Motion, the Debtors had not paid the mortgage for five months. This dispute was eventually resolved by entry of a Consent Order [66] Modifying Automatic Stay on August 25, 2006.

About three weeks later, the Debtors filed a Motion [68] to Approve Incurring New Secured Debt (the "Motion to Refinance"). The Chapter 13 Trustee filed a Response [69] on September 29, 2006. Although he did not oppose the relief sought, the Trustee asserted that all proceeds from the refinance, after payment in full to all lienholders, should be turned over to him

-2-

for distribution to creditors under the Plan. He also stated that as of that time, the amount necessary to pay all allowed claims in full was approximately $190,910.00, including Flagstar Bank's arrearage balance of about $1,558.00, and that the amount needed to pay off the plan base was $39,448.80.

On October 3, 2006, the Court entered an Order [70] Approving Secured Debt.[1] The Order contained, in part, the following provisions:

> "ORDERED, that all debts secured by present liens upon the property shall be paid at settlement; and it is further
>
> ORDERED, that after payment of the costs of closing and satisfaction of liens upon the property, the settlement office shall remit directly to the Chapter 13 Trustee the lesser of: (1) the amount required to pay all allowed claims; or (2) the total remaining net proceeds, together with a copy of the executed settlement sheet (HUD-1); and it is further
>
> ORDERED, that the plan confirmed in this case is hereby modified by the terms of this Order; and it is further,
>
> ORDERED, that if the Trustee does not receive the required proceeds and settlement sheet (HUD-1) with[in] ninety (90) days of the date of entry of this Order, the authority to refinance granted by the Order shall automatically terminate and the modification to plan approved here in shall be void."

*See* Order [70].

That day, the settlement agent requested from the Trustee a payment history and payoff figures. On October 4, 2006, the Trustee notified the settlement agent that the balance needed to pay all allowed claims in full was $174,337.85 and that the balance on the plan base was $39,448.80.

---

[1] The Order was the standard order uploaded by the Trustee and entered by this Court without objection by the Debtors.

On November 6, 2006, the Debtors filed a Request [72] to Terminate Automatic Payroll Deductions in Favor of Trustee Due to Completed Refinance and Completion of Plan Balance (the "First Request"). In the First Request, the Debtors asked that the Court immediately enter an Order ceasing the payroll deductions authorized by the Wage Order because the refinance had been consummated, $40,624.36 in proceeds had been paid to the Trustee, but payroll deductions had not stopped. According to the Debtors, two payments of $520.80 each had been made to the Trustee by Mr. McCloskey's employer after closing on the refinance. Three days later, the Debtors later withdrew the First Request on the grounds that the Trustee had assured them that the payroll deductions would cease and the payments made after the refinance would be returned to the Debtors. On November 20, 2006, the Debtors filed the instant Request. On December 19, 2006, the Court heard oral argument. The Debtors acknowledged that the wage deductions had ceased, but raised two new issues for the first time: (1) that the Trustee should be required to return $520.80 paid under the Wage Order and disbursed to creditors after the Order Approving Secured Debt was entered but before the Trustee received the refinance proceeds; and (2) that the Trustee should have received only the amount sufficient to pay the plan base.

## **CONCLUSIONS OF LAW**

At the hearing on December 19, 2006, the Debtors introduced the following exhibits:

1.  Department of Defense Civilian Leave and Earnings Statements with pay dates of October 20, 2006, November 3, 2006 and November 17, 2006 (collectively marked as Debtors' Exhibit 1);

2.  Settlement statement (or HUD-1) dated October 13, 2006 (marked as Debtors' Exhibit 2); and

      3.      Facsimile cover sheet from the Debtors to their attorney containing a Trustee's Periodic Report to Debtor dated October 2, 2006 (marked as Debtors' Exhibit 3).

The Trustee introduced the following exhibits:

      1.      A receipts register that reflects plan payments for the period August 3, 2004 through November 21, 2006 (marked as Trustee's Exhibit 1);

      2.      A disbursement ledger that reflects payments made to creditors (marked as Trustee's Exhibit 2); and

      3.      A facsimile transmission sheet from the Trustee to Tabitha Fitzgerald containing a receipts register for the period August 3, 2004 through September 26, 2006 and a Trustee's Period Report to the Debtor dated October 4, 2006 (marked as Trustee's Exhibit 3).

All of the exhibits were admitted into evidence without objection.

The Order Approving Secured Debt is unambiguous. The issue in this case is one of timing. On October 13, 2006, the refinance took place. On October 20, 2006, after the closing but before the proceeds were disbursed, the Debtors made a $520.80 plan payment. The Trustee received these funds on October 25, 2006 and on October 31, 2006, he distributed these funds to creditors. On November 1, 2006, the Trustee received proceeds from the refinance in the amount of $40,624.36. The Debtors made two payments after this date and the Trustee returned both of them to the Debtors.

The Debtors argued that they are entitled to a refund of $520.80, which is the monthly plan payment made after the Order Approving Secured Debt but before the Trustee received the refinance proceeds. They also argued that they are entitled to the difference between the Trustee's asserted base plan balance of $39,448.80 and the proceeds paid to him of $40,624.36, a

difference of $1,175.56.  They argued that the Trustee has received an overpayment of $1,696.36, and that permitting him to keep it results in a "rolling plan base."  Further, they argued that they are treated disparately because Mr. McCloskey's employer did not cease wage deductions, whereas other debtors may stop making plan payments to the Trustee after the entry of an order approving a refinance.  Whether or not the Trustee in a particular case pursues debtors who stop making payments too soon is not before the Court.  The Order Approving Secured Debt does not provide that payments should cease prior to the receipt of the proceeds.  In fact, to do so would result in the Debtors' risk of default under the terms of the Plan should the refinance not take place as planned.  The Debtors cited no authority, statutory or otherwise, in the Request or at the hearing in support of their position.  As stated, neither the Debtors nor the Trustee submitted post-hearing briefs.

The Court cannot grant the Debtors' Request.  The Order [70] Approving Secured Debt expressly states that the Trustee was to receive the amount required to pay all allowed claims – in this case, $174,337.85 – or the *total remaining net proceeds*, whichever is less.  The Order also says that the Plan was modified by the terms thereof.  Moreover, the Trustee's Periodic Report to Debtor of October 2, 2006, admitted as Debtors' Exhibit 3, contains the following language:

> "Your plan obligates you to pay a ***minimum*** amount called a base.  This amount is established at $48,736.  You have paid a total of $9,287.20.  Thus, the balance on your 'base' is $39,448.80... ***The balance is approximate.***  Interest, late filed claims, regular mortgage payments, if any, or other variables may affect the total amount to be paid."

*See* Debtors' Exhibit 3, pp. 2-3 (emphasis added).

Further, it is not unreasonable to expect that amounts provided in advance of closing on a

real estate transaction such as the refinance in this case would change somewhat by the time of settlement.  The Trustee received the net proceeds from the settlement, which were insufficient to pay all allowed claims in full.  The Court finds that the payments received by the Chapter 13 Trustee and then distributed to creditors was proper under the Order Approving Secured Debt.  Finally, the Court denies the Request insofar as the relief expressly sought therein, a cessation of the automatic payroll deductions, has occurred and the Trustee has returned to the Debtor the final payment made under the Wage Order.  A separate Order will issue.